**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
HELENA DIVISION**

DAVID M. GRAHAM                                                                                          PLAINTIFF

v.                                               NO. 2:06CV00187 JLH

UNION PACIFIC RAILROAD COMPANY                                                      DEFENDANT

**OPINION AND ORDER**

David Graham brought this action against his employer, Union Pacific Railroad Company, under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 et seq. He claims that Union Pacific's negligence caused Graham cumulative trauma injuries or aggravated his pre-existing conditions. Union Pacific filed a motion to strike Graham's expert witness, Michael Shinnick, arguing that his opinions are neither relevant nor reliable and will not assist the trier of fact. For the following reasons, Union Pacific's motion is denied.

**I.**

Union Pacific first argues that Graham's opinions are irrelevant. For expert testimony to be relevant, it must assist the trier of fact to understand the evidence or determine a fact in issue. FED. R. EVID. 702. Union Pacific contends that Graham's proffered testimony (i) that Union Pacific should have maintained an ergonomics program and (ii) that the failure to maintain an ergonomics program resulted in increased risk of repetitive motion trauma to Graham is irrelevant because Union Pacific does not have a duty under the Federal Employers' Liability Act (FELA) to implement an ergonomics program.

The FELA imposes on railroad employers the continuous duty to provide their employees with reasonably safe working environments. *Francisco v. Burlington N. R.R. Co.*, 204 F.3d 787, 789

(8th Cir. 2000). An employer is liable if its negligence played even a slight part in producing an injury resulting from an unsafe working condition. *Peyton v. St. Louis Southwestern Ry. Co.*, 962 F.2d 832, 833 (8th Cir. 1992). Whether the railroad employer breached its duty of care is measured by "the degree of care that persons of ordinary, reasonable prudence would use under similar circumstances and by what these same persons would anticipate as resulting from a particular condition." *Id.* (quoting *Ackley v. Chicago and N. W. Transp. Co.*, 820 F.2d 263, 267 (8th Cir. 1987)). Although the FELA does not impose a duty to maintain an ergonomics program, an employer's duty under the FELA "turns in a general sense on the reasonable foreseeability of harm." *Id.*

In *Williams v. Burlington N. and Santa Fe Ry. Co.*, 13 F. Supp. 2d 1125 (D. Kan. 1998), the plaintiff attempted to show that the defendant was negligent in failing to implement an ergonomics program to protect against carpal tunnel syndrome. *Williams*, 13 F. Supp. 2d at 1129. In that case, the plaintiff failed to provide excerpts of its expert's deposition testimony, which also could not be found in the record. *Id.* The court went on to state that the plaintiff failed to demonstrate a genuine issue of material fact because he provided no evidence that the defendant knew or should have known that work tasks performed by the plaintiff were unsafe. *Id.* The plaintiff did not show that the particular tasks he performed were unsafe or that the defendant knew or should have known those tasks to be unsafe. *Id.* at 1130. The plaintiff also failed to show that the defendant had any knowledge of general studies regarding carpal tunnel syndrome. *Id.* at 1130. Therefore, because the plaintiff was unable to present even the slightest evidence of negligence, the court held that no reasonable jury could find that the defendant knew or should have known of the alleged safety risks or that it breached its duty to the plaintiff by failing to implement remedial measures. *Id.* at 1130-31.

In *Wilcox v. CSX Transp., Inc.*, No. 1:05CV107, 2007 WL 1576708 (N.D. Ind. May 30, 2007), the district court did not allow into evidence the expert's opinion that the defendant was negligent because it failed to implement an ergonomics program. *Wilcox*, 2007 WL 1576708, at *15. The court noted, however, that the real issue in the case was not whether the defendant knew or should have known that implementation of an ergonomics program resulted in an unsafe working environment. *Id.* Rather, the real issue in *Wilcox* was whether the defendant was negligent as to the type of ballast it used at the plaintiff's work site. *Id.* As a result, the court concluded that evidence regarding an ergonomics program could be confusing to the jury. *Id.*

The present case is distinguishable from both *Williams* and *Wilcox*. In this case, Dr. Shinnick is prepared to offer evidence that Union Pacific knew or should have known that its failure to implement an ergonomics program could result in increased risk of repetitive motion trauma to its employees engaged in particular activities. Shinnick has relied on reports from the Association of American Railroads regarding ergonomics and cumulative trauma. Shinnick has also relied on a document from Union Pacific's "Cumulative Trauma Disorder Prevention Task Force," which appears to have been charged with developing a cumulative trauma prevention policy and identifying and preventing ergonomic hazards in the work place. Thus, unlike the expert in *Williams*, Shinnick has presented evidence on the disputed issue of whether Union Pacific knew or should have known that the lack of ergonomics training exposed Graham to a hazardous working environment. Ergonomics evidence in *Wilcox* could have confused a jury because the real issue in that case was the type of ballast used, not the absence of ergonomic training. Either the ballast was improper or it was not, and whether an ergonomics program had been implemented had no bearing on that issue. Here, Graham's case is based on the argument that the nature of his work increased the risk of back

injury but that risk could have been diminished by an ergonomics program. In this case, whether the absence of ergonomic training for Graham was a cause of his injuries and whether Union Pacific knew or should have known that absence of training increased Graham's risk level are genuine issues of material fact. Therefore, Shinnick's expert testimony is relevant to a material issue in this case.

**II.**

Union Pacific next argues that Shinnick's opinions are unreliable. Union Pacific relies heavily on *Pretter v. Metro N. Commuter R.R. Co.*, 206 F. Supp. 2d 601 (S.D.N.Y. 2002). In that case, the ergonomics expert stated that his proffered opinions regarding the employer's knowledge and negligence were held to a reasonable degree of scientific certainty. *Pretter*, 206 F. Supp. 2d at 603. The court held that opinions regarding an employer's knowledge and negligence were, "by their very nature, matters not reducible to scientific certainty." *Id.* The expert also proffered an opinion that the employees' duties exposed them to sufficient amounts of ergonomic risk factors to be consistent with development of carpal tunnel syndrome. *Id.* The court held that the expert's methodology was imprecise and his investigation inadequate. *Id.* The expert did not objectively measure the frequency or level of force of the employees' job functions, and he relied only on brief and casual visual inspection and videotaping of the employees' work functions. *Id.* at 603-04.

In *Stasior v. Nat'l R.R. Passenger Corp.*, 19 F. Supp. 2d 835 (N.D. Ill. 1998), the court held that the ergonomics expert, also Dr. Shinnick, was qualified as an ergonomics expert to render an opinion regarding causation. *Stasior*, 19 F. Supp. 2d at 852. The court held that his testimony was unreliable, however, because his opinions had not been subjected to the scientific method. *Id.* In that case, Shinnick failed to observe the employee's work station, measure the posture and repetition at that work station, or cite any peer-reviewed studies. *Id.* Therefore, because Shinnick merely

4

identified the general existence of risk factors and then concluded causation without further scientific inquiry, the court held his opinion to be unreliable. *Id.*

In this case, Shinnick's proffered testimony is based in part on on-site observation of similar job duties. Furthermore, after measuring the force involved in lifting tie plates, Shinnick had Dr. Victor Paquet, a professor of biomechanical engineering at the University of Buffalo, measure the forces brought to bear on L5/S1 when a man of Graham's size uses plate hooks to pull track tie plates of the size moved by Graham for Union Pacific. Part of Shinnick's analysis relies on Dr. Paquet's report. Shinnick also relied on and has cited to various industry publications, including publications by OSHA and the Association of American Railroads. The importance of these publications is to show, in effect, an industry standard regarding ergonomic safety programs in support of Shinnick's opinion that Union Pacific did not meet industry standards. Although Shinnick could not quantify an increase in Graham's risk level due to Union Pacific's failure to implement an ergonomics safety programs, he did rely on scientific tests and recognized industry publications to conclude that Graham's risk level for ergonomic injury was increased due to his working conditions. Shinnick's opinions are not inherently unreliable in this case. For the foregoing reasons, Union Pacific's motion to strike plaintiff's expert witness, Michael Shinnick, is denied.

IT IS SO ORDERED this 30th day of September, 2008.

J. LEON HOLMES
UNITED STATES DISTRICT JUDGE